UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARGIE'S BRAND, INC. et al.,

    Plaintiff,

v.

SAFEWAY, INC. et al.,

    Defendant.

No. 12 CV 7918
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

On February 3, 2013, Plaintiffs filed a fourteen-count Amended Complaint alleging civil rights violations, breach of contract, and various common law torts against Safeway, Inc. ("Safeway") and several of its senior management personnel (collectively, the "individual defendants"). The complaint alleges that Defendants refused to accept delivery of certain food products that they ordered from Plaintiffs, and that the refusal of delivery, and subsequent termination of the business relationship, was racially motivated. Safeway has answered three of the breach of contract claims. Safeway and the individual defendants now move to dismiss the remaining claims. Plaintiffs have agreed to withdraw several of the claims challenged in Defendants' 12(b)(6) motion, and seek leave to amend several of the others. For the following reason, Plaintiffs' partial motion to dismiss is GRANTED. Because the amount in controversy for the remaining breach of contract claims is under $75,000 and I decline to exercise supplemental jurisdiction, Counts VII, VIII, and IX are dismissed without prejudice to their re-filing in state court.

I. **BACKGROUND**

Plaintiff Margie's Brands, Inc. ("Margie's") is an Illinois corporation that manufactures

and distributes fruit spreads, syrups and marinades. Plaintiff Wilbur S. Reneau, who is African American, owns a majority stake in Margie's. Defendant Safeway, a California corporation, is the second largest supermarket chain in North America. The individual defendants are senior Safeway personnel. Specifically, Defendant Tim Williams is the Director of Diversity Affairs, Defendant Valerie Lewis is senior corporate counsel, Defendant John Cohen is Vice President and General Manager of Meals and Ingredients, and Defendant David Lee is President and General Manager of Non-Perishables.

Safeway runs a Diversity Supplier Program, which is designed to increase opportunity and growth for minority and women-owned food suppliers. For nearly ten years, Margie's participated in Safeway's Diversity Supplier Program. As a participant, Margie's agreed to supply, and Safeway agreed to purchase, various products produced by Margie's, including Margie's Banana Syrup.

On or about August 24, 2011, Safeway notified Reneau that a customer of a Safeway store located in Port Townsend, Washington, returned a jar of Margie's Banana Syrup because the customer believed it contained mold underneath the cap. The jar in question had a Use By date of October 7, 2012. Later that day, Defendants Williams, Lewis, Cohen and Lee placed a conference call to Reneau to discuss the matter. Reneau asked that Safeway ship a sample of the allegedly moldy syrup to House of Webster, the laboratory producer of Margie's products, for analysis. Reneau instructed Dr. Michael Kelley, the Director of Food Safety and Technical Services for House of Webster, to determine the likely cause of the alleged mold.

Based on the production records of the jar in question, Dr. Kelley reported that the product was both thermally pasteurized and thermally filled at 186 degrees Fahrenheit, a temperature at which mold spores cannot live to germinate. Dr. Kelley devised two possible

explanations for the black substance allegedly found in the jar.  The first explanation was that changes in altitude during the shipping of the product could have reduced the vacuum seal on the jar and allowed air to seep in.  Such an air presence could cause the syrup to darken prematurely.  The second explanation was that the product may have been damaged during the shipping process, causing a complete loss of vacuum, similar darkening of the syrup, and possibly further contamination.

I quote directly from the Amended Complaint to detail the subsequent transactions between Safeway and Margie's, and the allegations to which they give rise:

> 19.	On or about August 26, 2011, a SAFEWAY Operations specialist, Roman Gray ("Gray"), placed Purchase Order #408841 with MARGIE'S for 170 cases of Mango Fruit Spread, 170 cases of Guava Fruit Spread, and 170 cases of Margie's Banana Syrup. …
>
> 20.	On or about August 30, 2011, Gray placed Purchase Order #409171 with MARGIE'S for 68 cases of Guava Fruit Spread and 51 cases of Mango Fruit Spread. …
>
> 21.	On September 2, 2011, Gray emailed Reneau and instructed him to cancel SAFEWAY Purchase Orders #408841 and #409171 to "prevent overstock."
>
> 22.	Later that day, Gray sent a subsequent email that stated, "I just realized I have the mango and guava items on [Purchase orders #408841 and #409171] which I still need, so if you can just remove the banana syrup, that would be just fine."
>
> 23.	In reliance on SAFEWAY'S confirmation of Purchase Orders #408841 and #409171, MARGIE'S produced and shipped the products under said Purchase Orders. In connection, MARGIE'S issued Invoices #874120 and #874091 for a total discounted amount due of $12,309.46 and $4,308.31, respectively. …
>
> 24.	On or about September 19, 2011, Gray emailed Reneau inquiring about the status of Purchase Order #408841. That same day, Reneau responded via email and informed Gray that Purchase Order #408841 was scheduled for delivery on September 24, 2011.
>
> 25.	The product under Purchase Order #408841 was required to be delivered to the West location of SAFEWAY'S Consolidation Warehouse, located in Sacramento, California for subsequent distribution to SAFEWAY stores.

3

26. MARGIE'S trucking provider, Echo Global Logistics ("Echo"), made repeated, unsuccessful attempts to schedule delivery of Purchase Order #408841 with SAFEWAY'S Consolidation Warehouse.

27. On or about September 28, 2011, Echo scheduled delivery of Purchase Order #408841 with SAFEWAY'S Consolidation Warehouse for the following day, September 29, 2011.

28. On the same date, September 28, 2011, WILLIAMS emailed correspondence to Reneau, in which WILLIAMS made several false allegations, including, but not limited, to the following:

   a. That on August 24, 2011, upon being informed by SAFEWAY that Margie's Banana Syrup allegedly contained mold, Reneau failed to take any steps to retrieve samples of the product or instruct SAFEWAY as to how MARGIE'S wished to proceed;

   b. That on September 2, 2011, after numerous conversations during which Reneau failed to take responsibility for the problem or offer a plan of action to address concerns, SAFEWAY made the decision to immediately begin a formal withdrawal of Margie's Banana Syrup until further notice; and

   c. That the withdrawn Margie's Banana Syrup was stored for several weeks before being destroyed and, despite requests from SAFEWAY to Reneau on what to do with the product, Reneau and MARGIE'S failed to provide instructions on testing the samples of the remaining product.

29. WILLIAMS' September 28, 2011 email noted that on the previous day, September 27, 2011, RENEAU had requested that the original product be sent to MARGIE' S. WILLIAMS alleged that due to the passage of time, the original bottles of MARGIE'S Banana Syrup had already been destroyed.

30. The following day, September 29, 2011, Gray informed Echo that delivery of MARGIE'S products under Purchase Order #408841 could be performed on October 3, 2011, assuming that a delivery appointment could be scheduled with SAFEWAY'S Consolidation Warehouse.

31. On or about October 10, 2011, Gray placed Purchase Order #415455 with MARGIE'S for 270 cases of Margie's Banana Syrup, 145 cases of Margie's Guava Fruit Spread, and 85 cases of Margie's Mango Fruit Spread. …

32. In reliance on the confirmed Purchase Order #415455, MARGIE'S produced and shipped the products under Purchase Order #415455. In

4

connection, MARGIE'S issued Invoice #974513 for a total discounted amount due of $19,385.19. …

33.     The scheduled delivery date of Purchase Order #415455 was November 1, 2011, through BTS Transportation.

34.     Despite the repeated confirmations by Gray and SAFEWAY that SAFEWAY was purchasing MARGIE'S Products pursuant to Purchase Orders #408841 and #415455, SAFEWAY made it impossible for MARGIE'S to deliver the ordered products.

35.     MARGIE'S incurred a cost of $12,309.46 in producing the products ordered by SAFEWAY pursuant to Purchase Order #408841. MARGIE'S also incurred a cost of $698.00 in shipping those products to SAFEWAY.

36.     Because SAFEWAY refused to accept delivery of the products ordered under Purchase Order #408841, MARGIE'S was forced to ship said product back to MARGIE'S production plant, MARGIE'S incurred an additional cost of $698.00 to return said shipment.

37.     MARGIE'S incurred a cost of $19,385.19 in producing the products ordered pursuant to Purchase Order #415455. MARGIE'S also incurred a cost of $1,200.00 in shipping those products to SAFEWAY.

38.     Because SAFEWAY refused to accept delivery of the products ordered under Purchase Order #415455, MARGIE'S was forced to ship said products back to MARGIE'S production plant. MARGIE'S incurred an additional $1,200.00 in shipping costs and $65.00 in processing fees to return said shipment.

39.     Each and every invoice issued by MARGIE'S allows a one percent discount for swell allowance to cover the costs of reclaiming spoiled products or damaged products.

40.     On or about October 7, 2011, MARGIE'S received payment from SAFEWAY for Invoices #8715321[fn. omitted] and #874091 in the amount of $492.99. The total invoice amount for Invoices #871532 and #874091 was $10,089.92. From the total invoice amount of $10,089.92, SAFEWAY legitimately deducted $3,527.00 as a permissible promotional deduction. Therefore, after the permissible promotional deduction, the total amount due and owing to MARGIE'S under Invoices #871532 and #874091 was $6,562.99. However, SAFEWAY also deducted $6,069.03 from the total amount as reclamation charges for the withdrawn Margie's Banana Syrup (that SAFEWAY had destroyed).

41.     SAFEWAY wrongly deducted $6,069.03 from Invoices #871532 and #874091, as the reclamation charges deducted from said Invoices were already

5

accounted for pursuant to the one percent discount for swell allowance to cover the costs of reclamation.

42. Furthermore, SAFEWAY destroyed the Margie's Banana Syrup without allowing MARGIE'S (despite repeated requests) to analyze said product for the existence of mold.

43. Dr. Kelley confirmed that he believed the alleged mold to be an isolated incident. Thus, the remainder of the MARGIE'S product in the possession of SAFEWAY (that was ultimately destroyed without the opportunity for MARGIE'S analysis) was safe for the sale to, and consumption by, consumers.

44. On or about October 7, 2011, Reneau informed WILLIAMS that the reclamation charges from Invoices #871532 and #874091 were wrongfully deducted and demanded payment for the remainder of said invoices.

45. In correspondence dated September 28, 2011, WILLIAMS informed Reneau that SAFEWAY was recalling the banana syrup for a manufacturing defect and was ending its business relationship with MARGIE'S.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III. ANALYSIS

A. <u>Race Discrimination Claims (Counts II-IV)</u>

Plaintiff alleges that Safeway's refusal to accept orders of Margie's Banana Syrup and termination of its business relationship with Margie's was motivated by unlawful racial animus. Specifically, Count II alleges deprivation of contractual rights based on race, 42 U.S.C. § 1981; Count III alleges a "violation" of § 1983; and Count IV alleges Title VI discrimination by a federally assisted Program, 42 U.S.C. § 2000d *et seq*. All of the race discrimination claims are dismissed.

Counts III, IV, and VI all require a showing of intentional discrimination. Plaintiffs have not pled any facts from which this Court can plausibly infer that the Defendants' actions were influenced by discriminatory intent.[1] Several facts that Plaintiffs allege tend to undercut the inference, including the fact that Safeway has instituted a Diversity Supplier Program, and Safeway did business with Margie's for nearly ten years under the program. To give rise to a plausible inference of race discrimination (or to make such an inference "reasonable" in light of the far more obvious inference that Safeway terminated the relationship because of concerns over a mysterious substance found in Margie's product), Plaintiff would, at the very least, have to plead some facts to show that Defendants have treated non-minority suppliers differently when it ran into similar problems with their products. Plaintiff alleges so in a general, conclusory manner, see ¶¶ 68-69 of the Amended Complaint, but the Amended Complaint does not contain sufficient factual content to "nudge his claims of purposeful discrimination across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (internal quotation omitted).

    B.    <u>Counts V, VI and XIV</u>

---

[1] Count III is dismissed on the additional ground that Plaintiff does not allege that Defendants were acting under color of law. 42 U.S.C. § 1983. Nor does he allege what rights under the Constitution or laws of the United States were violated--§ 1983 is a cause of action, not a source of substantive rights. To the extent that Plaintiff meant to plead Count III under 42 U.S.C. § 1981, it is duplicative of Count II and is dismissed on those grounds as well.

Count V alleges a civil conspiracy to deprive Plaintiffs of their civil rights under 42 U.S.C. § 1985(3).[2] A plaintiff raising a § 1985(3) claim must allege (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws; (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property of a right or privilege granted to U.S. citizens. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). The complaint must plead enough facts to allow me to plausibly infer (1) "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id*. The civil conspiracy claim fails for the same reason as the substantive race discrimination claims: there simply is not sufficient factual content to allow me to plausibly infer that Defendants acted with racial animus. Count V is dismissed.

Count IX is for intentional infliction of emotional distress. The Illinois Supreme Court has set forth three requirements necessary to demonstrate intentional infliction of emotional distress: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (1988). Defendants' alleged refusal to accept delivery of Plaintiffs' product and termination of the business relationship between Safeway and Margie's, by an objective measure, falls far short of "extreme and outrageous" conduct. Count IX is dismissed.

Plaintiffs voluntarily withdraw Count VI for fraud: dismissed.

---

[2] I infer that Plaintiffs intend to bring this as a § 1985, rather than a common law, civil conspiracy claim because they point to 28 U.S.C. § 1343(a) as the jurisdictional basis for the claim. See Amended Comp. ¶ 94.

C. Breach of Contract/Promissory Estoppel Claims

Counts I, VII, VIII, and IX allege breach of contract. Count I is confusing. Plaintiffs do not point to a specific contract that was breached. Rather, the claim appears to be based on Plaintiffs' overall business relationship with Safeway. By doing business with Plaintiffs for ten years, Defendants did not contractually oblige themselves into perpetuity. This is America—people can do business with whomever they choose, so long as they honor their obligations under the law. Absent any well-pled facts that Defendants had a legal obligation to continue to do business with Plaintiffs (i.e. an agreement that Safeway would do X amount of business with Margie's through Y date), there is no breach of contract claim. Count I is dismissed.

Counts X, XI, and XII, and XIII are entirely duplicative of Counts VII, VIII, and IX but are brought under the headings of promissory estoppel and unjust enrichment rather than breach of contract. They are dismissed as duplicative.

Defendants have answered Counts VII, VIII, and IX, which allege breach of contract as to purchase order numbers 408841, 415455, and 871532/874091. I do not have original jurisdiction over these claims—the parties are diverse, but the amount in controversy for all of the claims combined ($41,624.68) falls well short of $75,000. 28 U.S.C. § 1332(a). Having dismissed all federal claims, I decline to exercise supplemental jurisdiction over the remaining breach of contract claims. 28 U.S.C. § 1367(c)(3). They are dismissed without prejudice to their being re-filed in state court.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED, and the Court *sua sponte* dismisses the remaining claims.

ENTER:

James B. Zagel
United States District Judge

DATE: June 24, 2013